NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| Dr. W. Renee WALKER,<br><br>              Plaintiff,<br>v.<br><br>MERCER COUNTY COMMUNITY COLLEGE,<br><br>              Defendant. | Civ. No. 11-4973<br><br>OPINION |

THOMPSON, U.S.D.J.

I. INTRODUCTION

This matter comes before the Court upon the Motion for Summary Judgment filed by Plaintiff Renee Walker ("Plaintiff"), (Docket No. 27), and the Cross Motion for Summary Judgment filed by Defendant Mercer County Community College ("Defendant"), (Docket No. 30). The Court has decided the matter upon consideration of the parties' written submissions and without oral argument, pursuant to Federal Rule of Civil Procedure 78(b). For the reasons given below, Plaintiff's Motion for Summary Judgment is denied and Defendant's Cross Motion for Summary Judgment is granted.

II. BACKGROUND

In 1999, Plaintiff was hired by Mercer County Community College ("MCCC") to work on Project Inside as a fulltime, non-faculty employee. (Docket No. 30, Att. 3, ¶ 1). Project Inside is a federally funded program that provides educational services to incarcerated youths.

1

(*Id.* at ¶ 2). Plaintiff's initial responsibilities included teaching courses to incarcerated students and coordinating the program. (*Id.* at ¶ 1).

In 2004, Plaintiff became a full faculty member and attained tenure in 2006. (*Id.* at ¶ 3). For 12-month faculty employees, workload assignments are developed collaboratively by the employee and the dean. (*Id.* at ¶ 3). The normal workload for 12-month faculty employees is 15 work credits per semester. (*Id.* at ¶ 4). Plaintiff's initial workload assignment consisted of six credits for coordinating Project Inside and nine credits for teaching courses. (*Id.* at ¶ 4).

In 2006, Project Inside was transferred from the MCCC Business Department to the MCCC Liberal Arts Department making Robin Schore, the Dean of the Liberal Arts Department, Plaintiff's supervisor. (*Id.* at ¶ 5). In 2006, Plaintiff submitted a proposal to MCCC's Vice President of Academic Affairs recommending a reorganization of Project Inside. (*Id.* at ¶ 6). Plaintiff's reorganization proposal specifically requested that she be released from her teaching responsibilities, receive a $105,241.20 raise, and have her title changed to Assistant Vice President. (*Id.* at ¶ 6). MCCC refused to elevate Plaintiff's title or salary. (*Id.* at ¶ 7). Defendant claims that Plaintiff became increasingly difficult to work with after the rejection of her reorganization proposal in 2006. (*Id.* at ¶ 7).

On June 26, 2009, Dean Schore recommended that Plaintiff step down from her position as coordinator of Project Inside and move to a 10-month faculty position. (*Id.* at ¶ 11-12). Dean Schore's reason for the recommendation was that Plaintiff violated her workload agreement by arranging for faculty from Princeton University to teach courses that Plaintiff was scheduled and paid by MCCC to teach. (Docket No. 30, Att. 10, Ex. K at T 110:10 – 113:23). Dean Schore also based his recommendation on Plaintiff's "expressed discontent with her current position" and Project Inside's reduction in size. (Docket No. 30, Att. 11). The MCCC Administration

accepted Dean Schore's recommendation and Plaintiff went from working 12 months per year to 10 months per year. (Docket No. 30, Att. 10, ¶ 12). Plaintiff's monthly salary was not altered when she was removed from her position as coordinator of Project Inside; however, her annual salary decreased as a result of the reduction in her annual workload. (*Id.* at ¶ 13).

On December 3, 2009, Plaintiff filed an EEOC Charge of Discrimination against the Defendant based on race, sex, and retaliation. (Docket No. 1). In her EEOC Charge, Plaintiff claimed that the reason given by Dean Schore for her reassignment was that she was a "black alpha female with a bad attitude." (*Id.*) Plaintiff further alleged she was replaced as coordinator of Project Inside by someone with less experience and fewer credentials. (*Id.*) Dean Schore denies calling Plaintiff a "black alpha female with a bad attitude;" however, Dean Schore does admit to having a conversation with Plaintiff in March 2009 and saying the following statement to Plaintiff: "don't get drawn into that black alpha female conflict." (Docket No. 30, Att. 11). Defendant denies Plaintiff's allegations that the replacement coordinator of Project Inside was unqualified. (Docket No. 30, Att. 1).

On July 29, 2011, the EEOC reported that it was unable to conclude Plaintiff's EEOC Claim established the violation of any statutes. (Docket No. 1). The EEOC dismissed Plaintiff's claim and provided Plaintiff with a notice of right to sue letter. (*Id.*)

On August 29, 2011, Plaintiff filed the Complaint in District Court. (Docket No. 1). In the Complaint, Plaintiff claims that she was passed over for promotion on August 23, 2011. (*Id.*) Plaintiff additionally claims that Defendant engaged in discriminatory conduct on the basis of Plaintiff's race, color, sex, and age. (*Id.*) Plaintiff also claims that she was underpaid for work performed from November 6, 2008 until August 29, 2011 in violation of the Equal Pay Act. (*Id.*)

3

In September 2012, Defendant learned that Plaintiff had taken an unauthorized leave of absence and was not teaching her scheduled classes. (Docket No. 30, Att. 10, ¶ 20). After Plaintiff failed to return to work as ordered, on October 23, 2012, tenure charges were filed against her for insubordination, job abandonment, and for taking an unauthorized leave of absence. (*Id*. at ¶ 21). After an Administrative Law hearing, it was recommended that Plaintiff's tenure be terminated. (*Id*. at ¶ 22). On May 16, 2013, Defendant adopted the decision of the Administrative Law Judge and Plaintiff's employment at MCCC ended. (*Id*. at ¶ 23).

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted). In resolving a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). More precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248-49. The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Properly applied, Rule 56 will "isolate and

dispose of factually unsupported claims or defenses" before those issues come to trial. *Id.* at 323-24.

IV. ANALYSIS

Plaintiff brings this action pursuant to Title VII of the Civil Rights Act. Plaintiff's stated grounds for relief are unclear and complicated by discrepancies between Plaintiff's EEOC Complaint, District Court Complaint, and Motion for Summary Judgment. Plaintiff's EEOC Complaint raises charges of discrimination on the basis of race, sex, and retaliation stemming from disputes between Plaintiff and Defendant in 2009. (Docket No. 1).[1] The District Court Complaint raises charges of discrimination on the basis of race, color, sex, age and retaliation stemming from disputes between Plaintiff and Defendant in 2011. (Docket No. 1).[2] Plaintiff's motion for summary judgment further discusses a dispute over a leave of absence which ultimately led to Plaintiff's tenure dismissal on May 17, 2013. (Docket No. 27, Att. 1, ¶¶ 9-14).

It is well settled that a party seeking relief under Title VII must file timely charges of employment discrimination with the EEOC before that party may seek judicial relief. *Love v. Pullman Co.*, 404 U.S. 522 (1972); *Robinson v. Dalton,* 107 F.3d 1018, 1020 (3d Cir.1997). Plaintiff's failure to raise all allegations of discrimination in her 2009 EEOC complaint could be viewed as grounds for dismissal for failure to exhaust administrative remedies. However, this Court is mindful that the Third Circuit allows allegations of discriminatory conduct that were not specifically alleged in the administrative proceedings to be asserted in District Court if those allegations "can reasonably be expected to grow out of the initial charge of discrimination."

---

[1] The December 4, 2009 EEOC Complaint specifically discusses Plaintiff's removal as the head of Project Inside, Plaintiff's subsequent reduction in pay, and Plaintiff's supervisor describing Plaintiff as a "black alpha female with a bad attitude." (Docket No. 1).

[2] The District Court Complaint specifically discusses Plaintiff being passed over for promotion on August 23, 2011.(Docket No. 1).

5

*Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-99 (3d Cir. 1976). *See also Molthan v.Temple Univ.,* 778 F.2d 955, 960 (3d Cir.1985); *Howze v. Jones & Laughlin Steel Corp.,* 750 F.2d 1208 (3d Cir.1984); *Waiters v. Parsons,* 729 F.2d 233, 237 (3d Cir.1984). The proper inquiry to determine whether a plaintiff "has satisfied the administrative prerequisites to bring suit in federal court is whether the acts complained of were fairly within the scope of the EEOC complaint and the ensuing investigation." *Parsons v. Philadelphia Coordinating Office of Drug & Abuse Programs,* 822 F.Supp. 1181, 1184 (E.D.Pa.1993).

Here, there is a question as to whether Plaintiff's discrimination claims on the basis of color, age, and retaliation (stemming from incidents in 2011 and 2013) should be dismissed for failure to exhaust administrative remedies. None of these claims were included in Plaintiff's 2009 EEOC Charge; however, all of these claims could potentially be seen as growing "out of the initial charge of discrimination." *See Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-99 (3d Cir. 1976). Regardless, this Court finds that the inclusion of these additional charges of discrimination has no impact on the ultimate decision in this case. After reviewing all of this case's pleadings, discovery materials, and affidavits, including the charges of discrimination that were not specifically outlined in Plaintiff's original EEOC complaint, this Court has determined that no genuine issue of material fact exists and summary judgment in favor of Defendant is proper.

*1. Discrimination*

Title VII of the Civil Rights Act of 1964 forbids employment discrimination based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). In assessing claims under Title VII and related retaliation claims, courts apply the burden-shifting analysis set forth in *McDonnell Douglas*

*Corp. v. Green*. 411 U.S. 792, 803-803 (1973). Under that analysis, a plaintiff must satisfy the initial burden of making a prima facie case of discrimination.

To establish a prima facie case of discrimination under Title VII, a plaintiff must show the following: (1) that she is a member of a protected class; (2) that she was qualified for the position; (3) that she suffered an adverse employment action; and (4) that the adverse action occurred under circumstances that give rise to an inference of discrimination. *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 412 (3d Cir. 1999). An adverse employment action is a material change in the terms and conditions of employment. *Burlington N.*, 548 U.S. at 60.

If the employee makes out a prima facie case, the burden of production shifts to the employer to establish a legitimate, nondiscriminatory reason for its actions. *Fuentes v. Borough of Watchung*, 286 F. App'x 781, 784-85 (3d Cir. 2008). If the employer establishes a legitimate, nondiscriminatory reason for its actions, the burden of production shifts back to the employee to show that the employer's proffered reason was a pretext for actual discrimination. *Id*. The Third Circuit has held that a plaintiff may defeat a motion for summary judgment by pointing "to some evidence, direct or circumstantial, from which a factfinder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id*.

Here, Plaintiff cannot establish a prima facie case of discrimination. Plaintiff seems to be able to establish the first three elements: (1) Plaintiff is African American and thus a member of a protected class; (2) Plaintiff was qualified to serve as the coordinator of "Project Inside;" and (3) Plaintiff suffered an adverse employment action when she was demoted from a 12-month position to a 10-month position and ultimately terminated entirely. However, the circumstances

of this case do not give rise to an inference of discrimination. Aside from the disputed conversation between Dean Schore and Plaintiff in March 2009, there is no indication that Plaintiff experienced any discrimination during her 14 year employment with MCCC. Even if the conversation between Dean Schore and Plaintiff provided the inference of discrimination necessary to establish a prima facie case, Defendant still had multiple legitimate business reasons to justify adverse employment actions against Plaintiff. The record shows Plaintiff did not honor her teaching responsibilities and took an unauthorized leave of absence. (Docket No. 30, Att. 11, Ex. L, ¶ 6, 19). Defendant's decision to terminate Plaintiff's employment in 2013 was further supported by an Administrative Law Hearing. (Docket No. 30, Att. 10, ¶ 22). Plaintiff offers no evidence "from which a factfinder would reasonably disbelieve the employer's articulated legitimate reasons" or "believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764. Thus, we must grant summary judgment in favor of Defendant with regards to Plaintiff's claims of discrimination pursuant to Title VII.

   *2. Hostile Work Environment*

The scope of protection provided by Title VII includes protection against a hostile work environment that is abusive to an employee on the basis of his or her race. *Cardenas v. Massey,* 269 F.3d 251, 260 (3d Cir.2001); *West v. Philadelphia Elec. Co.,* 45 F.3d 744, 753 (3d Cir.1995). In order to establish a hostile work environment claim under Title VII, a plaintiff must show the following: "(1) he suffered intentional discrimination because of his [race]; (2) the discrimination was pervasive and regular; (3) it detrimentally affected him; (4) it would have detrimentally affected a reasonable person of the same protected class in his position; and (5)

8

there is a basis for vicarious liability." *Cardenas,* 269 F.3d at 260 (citing *Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1081 (3d Cir.1996)).

The Third Circuit has held that "offhanded comments, and isolated incidents (unless extremely serious) are not sufficient to sustain a hostile work environment claim." *Caver v. City of Trenton,* 420 F.3d 243, 262 (3d Cir.2005) (internal quotation marks and citation omitted). Instead, the "conduct must be extreme to amount to a change in the terms and conditions of employment." *Id.* In assessing hostile work environment claims, the court does not review individual incidents in isolation; instead, it must look at the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it involves physical threats or humiliation, and whether it interferes with the employee's work performance. *Id.* at 262-63.

Here, when the conduct complained of by Plaintiff is viewed under the totality of the circumstances, Plaintiff fails to show she suffered pervasive, intentional discrimination because of her age, sex, race, or color. The only incident of possible discrimination in the record is the conversation between Plaintiff and Dean Schore in March of 2009. Plaintiff and Defendant dispute the exact comment that was made during that conversation. While any comment referencing an employee's race is inappropriate, when viewed in the context of 14 years of employment, this complaint does not appear to rise to the type of extreme harassment that would change the terms and conditions of Plaintiff's employment. For this reason, this Court grants summary judgment in favor of the Defendant on Plaintiff's hostile work environment claims.

   *3. Retaliation*

Title VII prohibits an employer from taking retaliatory action against an employee for complaining that the employer violated an antidiscrimination statute. *See* 42 U.S.C. § 2000e-

3(a) ( Title VII). To establish a prima facie case of retaliation under Title VII, a plaintiff must establish the following: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Nelson v. Upsala Coll.,* 51 F.3d 383, 386 (3d Cir.1995).

If the employee establishes this prima facie case of retaliation, the *McDonnell Douglas* burden shifting analysis applies: "the burden shifts to the employer to advance a legitimate, non-retaliatory reason" for its conduct and, if it does so, "the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Krouse v. Am. Sterilizer Co.,* 126 F.3d 494, 500-01 (3d Cir.1997).

Here, there is no evidence on the record to support the claim that Defendant's actions against Plaintiff were in retaliation for Plaintiff's filing an EEOC complaint or opposing discrimination made illegal by Title VII. Plaintiff produces no evidence which could in any way be construed as showing that Defendant's decisions regarding Plaintiff's employment were motivated by any reason other than Plaintiff's violations of her terms of employment. For these reasons, summary judgment shall also be entered in favor of Defendant on Plaintiff's retaliation claims.

## V. CONCLUSION

For the foregoing reasons, Defendant's cross motion for summary judgment is granted.

An appropriate order will follow.

                                                    */s/ Anne E. Thompson*
                                                    ANNE E. THOMPSON, U.S.D.J.

Date: 10/21/13